**E-FILED**
Monday, 06 June, 2005 12:24:20 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Troy L. Hamilton
1327 Dennison Dr. Apt C#
Springfield IL. 62704

_____
            Plaintiff(s)

                                    05-3129

        vs.                    Case No: ~~2:0-2004-0666~~ 1

Springfield Metro Sanitary
District
3017 N. 8th Street
Springfield IL. 62704

_____

_____
            Defendant(s)

PRO SE COMPLAINT AGAINST EMPLOYMENT DISCRIMINATION, UNDER TITLE
VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e-5

I.   PREVIOUS PROCEEDINGS BEFORE THE EQUAL EMPLOYMENT
     OPPORTUNITIES COMMISSION (EEOC)

     A.   Have you filed a charge before the federal Equal
     Employment Opportunities Commission (EEOC) relating to this
     claim of employment discrimination?

     ( ✓ )   YES

     (  )    NO

     B.   If your answer is YES, Describe the EEOC proceeding:

          1.   Parties to the previous EEOC proceeding:

               Petitioner (s)  Norton Nedoss
               Regina Husar
               _____

EMPLOYMENT DISCRIMINATION
PRO SE COMPLAINT
PAGE 2

Respondent (s) _____

_____

_____

2.   Location of EEOC office that handled your charge:

_500 W. MADison St. Suite 2800 Chicago IL. CO661_

3.   Docket or case number of your charge: _210-2004-06661_

4.   Disposition (what was the final result of your charge): _____

_Notice OF Right to Sue_

_ISSUED February 28 2005_

_____

5.   Has EEOC written you a right-to-sue letter
(telling you you have the right to sue in a United
States District Court if you are dissatisfied with
the disposition of your charge)?

( ✓ )   YES

(   )   NO

6.   Date of filing charge before EEOC: _10/8/04_

7.   Date of disposition by EEOC: _2/28/05_

C.   Attach copies of all documents you possess relating to
the EEOC proceeding, ESPECIALLY YOUR RIGHT-TO-SUE LETTER.

II.   PREVIOUS LOCAL, STATE OR FEDERAL PROCEEDINGS OTHER THAN EEOC

A.   Have you begun other legal proceedings before state or
local courts or agencies, or a federal court (but NOT the
EEOC) relating to your claim of employment discrimination?

(   )   YES

( ✓ )   NO

EMPLOYMENT DISCRIMINATION
PRO SE COMPLAINT
PAGE 3

B.    If your answer is YES, describe each legal proceeding:

1.    Parties to the previous legal proceeding:
      Plaintiff(s) or petitioner(s) _____ N/A

_____

_____

Defendant(s) or respondent(s) _____

_____

_____

2.    Name of court or agency: _____

_____

_____

3.    Docket or case number: _____

4.    Name of the judge or hearing officer: _____

_____

5.    Disposition (for example: Was the case dismissed?
      Who won?  Was there an appeal?  Is the appeal pending
      or final? _____ N/A

_____

_____

_____

_____

6.    Date of beginning previous proceeding: N/A

7.    Date of disposition of proceeding: N/A

NOTE:  If there was more than one previous legal proceeding,
excluding an EEOC proceeding, describe them on separate sheets of
paper.  Follow the outline above, label the sheets clearly, and
attach them to this pro se complaint.

EMPLOYMENT DISCRIMINATION
PRO SE COMPLAINT
PAGE 4

    C.    Have you attached separate sheets regarding previous
state, local or federal legal proceedings (other than EEOC)?

    (  )    YES

    (✗)    NO

## III.  PARTIES TO YOUR PRO SE COMPLAINT OF EMPLOYMENT DISCRIMINATION

    A.    Plaintiff(s)

    1.    Your full name _Troy  L. Hamilton_

    2.    Your address _1327  Dennison  Dr._
_Apt. C  Springfield, Illinois  62704_

    3.    Names and addresses of other plaintiffs, if any
(You should name other plaintiffs only if they were
petitioners with you in a previous EEOC proceeding, or
else if EEOC began a previous proceeding on behalf of
you and them): _N/A_

    (Use a separate sheet if necessary; label it clearly if so)

    B.    Have you attached a separate sheet naming other
plaintiffs?

    (  )    YES

    (✗)    NO

    C.    Defendant (s) (You should name here the first-named
respondent, or else its successor, in the previous EEOC
proceeding brought by you or on your behalf):

    1.    Full name (individual or firm): _Springfield_
_Metro Sanitary District_

EMPLOYMENT DISCRIMINATION
PRO SE COMPLAINT
PAGE 5

2.  Business address: _3017 N. Eight Street_
_Springfield IL. 62707_

3.  Job position (if individual) _Relief Operator_

4.  Status as an entity (if defendant is a business
firm) --

(   )  Corporation

(   )  Partnership

(   )  Sole Proprietorship

(   )  Other _Municipal Government_

(If you do not know this information, and you cannot find
out by reasonable means, ask the defendant for it.  If the
defendant will not tell you, leave this section blank.)

5.  Names, business addresses, and job position or
entity status of other defendants, if any (you should
name additional defendants only if they were named as
respondents in a previous EEOC proceeding brought by
you or on your behalf): _____

_____

_____

_____

(Use a separate sheet if necessary; label it clearly if so)

D.  Have you attached a separate sheet naming other
defendants?

(   )  YES

(✗)  NO

Attention
United States District Court


Here is a Evaluation Report that was given to Andy Alvey Direct Engineer
of SMSD by Ron Nyberg my Immediate Supervisor, this is not a Evaluation
Form of the SMSD, this is nothing. But here say and it is racial,
discrimination and also harassment. I was put on a 60 day extended
probation behind this, which is so wrong, for Andy Alvey should not have
gave me my evaluation of my 90 day probation period. Because he was not
out there everyday on the job site with me and my immediate supervisor
was, which is Ron Nyberg he's the one that was writing these false
accusations about me and your Honor, as you will see in this report you will
see a lot of that said about me, things that I didn't do and things that I didn't
say I was the only African American on this Labor gang and to my
knowledge I did not have any problems with my co – workers. Here also I
have enclosed copies of one which is a written statement from Jim Garrison
on 8/7/03 saying it was not me that told him to get somebody else to go
down in the tank, but look on the front page of the evaluation report that Ron
Nyberg 8/7/03 you will see where Ron Nyberg accused me when he knew
that I didn't say that Chris Ray did, Whom is white, but Andy Alvey accused
me of it when it's right there in writing and during my evaluation Dan Paoni
was present and after the evaluation Dan Paoni told me that was not right
what kinda evaluation was that so Andy Alvey told me let's go on
Thanksgiving Break and I will think about what I'm going to do to you.
Your Honor here is enclosed the real evaluation form of SMSD which was
given to me by supervisor then Jerry Miller when I was a janitor and I was
on 6 month probation he gave me one the 1st 3 months, then another on my 6
month period and as you will see I've read both of them and signed off on
them and made my comments, now that is a professional way of handling a
evaluation form. Now this is a evaluation form. Now this evaluation report,
which Ron Nyberg made out, is not a SMSD employee evaluation form it is
racial, discrimination and harassment. Your Honor I have never seen this
evaluation report or the paper that Jim Garrison wrote or these copies of my
drug/ alcohol test, which was not shown to me and I had every right to see
them deep down in my heart I believe that my title of the Civil Rights Act of
1964 has been violated.

# United States District Court

**I** <u>Troy L. Hamilton</u> am filing a discrimination & harassment in a hostile work environment charge against Springfield Metro Sanitary Dist., Director, **Andy Alvey** and my former immediate supervisor, **Ron Nyberg**.

**I** <u>Troy L. Hamilton</u> was terminated for failing a drug screen test which you will see on the copy I have provided for you it will state that this was a random drug test. On the morning of March 9, 2004, I was approached by my supervisor **Ron Nyberg** at the SMSD 8th St. plant where I was at the back of the plant weed eating around the pond when he called me up the hill and told me to come on up that I had to take a drug test. I got into his truck where he told me that this was not a random test that this was a scheduled drug test. Now I' m in the Midwest Trucking Lottery of 28,000 CDL Drivers. Now I've already had my scheduled pre employment drug test on 9/19/03 so that puts me in the random lottery, so why did **Ron Nyberg** tell me that this was a scheduled drug test, which I know he will deny. Now out of 28,000 CDL employee's in this Midwest Trucking Lottery, I wonder how two employees' from the same plant number came up randomly at same time this I don't understand. Now this kind of puzzles me how I can be randomly picked for a drug test two to three days prior to my extended 60-day probation.  I spoke to Dr. Mcclean over the phone he told me they traced cocaine in my urine and I replied to him I can't understand how because I am not a cocaine user. At that time Dr. Mcclean asked me was I on any medication and I said yes, I was taking Tylenol 3 with codeine. He asked have I been out at any clubs and I said yes and he said maybe it was slipped to you with you not knowing but we traced cocaine in your urine and we will have to inform your employer. Now I searched back in my mind on the night of the fund-raiser I attended and the clubs I went to downtown Springfield on 3/05/04, which was a Friday, and I had few drinks and I asked a young lady for a cigarette and she gave me one and I was smoking it and noticed a funny taste on it and I replied to her that this cigarette tastes funny and so I put the cigarette out, what she gave me was a cigarette that was laced by accident.

Now yes it was a accident, but I feel and my Union Stewards, Larry Kilwy and Dan Paoni feel I shouldn't of been terminated without having a chance to seek rehabilitation treatment. Myself and Larry Kilwy went into the office and talked with Andy Alvey and I explained to him that I was not a cocaine user or abuser that it was slipped to me in a cigarette and I don't want to

loose my job over something I don't do I told Mr. Alvey I would take another drug test or rehab what ever I had to do to keep my job Andy Alvey replied to me that we will see how my 2nd specimen of urine turns out if it comes back negative or positive and I replied to him if the first one came out positive so will the second one it's the same urine and Andy Alvey replied when the 2nd specimen comes back myself, him, and Larry Kilwy will sit down and talk about what we will do about this situation. But when my split urine sample came back Andy Alvey on March 26, 2004 called me in the office, not with Larry Kilwy, but Dan Paoni and Chuck Mycoy and Ron Nyberg were present and Andy Alvey did not talk to me about the situation he fired me like I was a piece of black trash. Dan Paoni asked Andy could I go to rehab since this was my first time and Andy Alvey shut it down and told him NO I could not and, Chuck Mycoy said to me that I should have come forth and said I had a drug problem and I replied to Chuck I do not have a drug problem and I'm not a cocaine user it was slipped to me in a cigarette by accident. Now what I don't understand before my termination I went to my B.A in my Local Union 399 Rusty Thompson about my situation and he told me there's nothing they can do for me. Now here I'm paying $41.00 a month in Union dues and this what my B.A in my Union tells me that my union can't do nothing for me so why I'm paying union dues, if I can't get help from my union why cause its color of my skin that I'm a black man. Now I knew of a situation with a white man name Pat Freidmier who was an alcoholic and he was allowed three chances to go to rehab which he did he completed his classes and rehabilitation he was demoted to janitor for 60 days at the end of the 60 day period he was given his position back as a relief operator my question is why wasn't I given the same chances. I have never been disciplined, or questioned about any drug use or alcohol abuse. SO WHY WASN'T I GIVEN ANOTHER CHANCE LIKE THE OTHER MAN, I AM SURE, THAT WORDS ZERO TOLERANCE WILL COME OUT OF ANDY ALVEY MOUTH. NOW DOES ZERO TOLERANCE ONLY PRETAIN TO THE BLACK MAN OR THE WHITE MAN?

# EVALUATION REPORT



*Troy Hamilton*

JULY

July 9, 2003 - Troy damaged a fence while mowing.

July 10, 2003 - While talking to Troy I asked him to listen to me and stop talking back while I was trying to talk to him. He refused. Troy would not cooperate with me. At that point Troy became angry and much louder . I then decided to end our conversation before it went any further.

July 25, 2003 - Troy left early for lunch - got up out of Tank #7. He did not tell Jim Garrison that he was leaving and just left. Andy called him in with Dan Paoni, Troy said that if he left early it was just two (2) minutes.

AUGUST

August 7, 2003 - Troy told Jim Garrison to have someone else work in the tank as the "shit" was to deep. Jim told him that he was going to find me, then Troy decided to do the work.

August 8, 2003 - Troy was late by twelve (12) minutes.

August 15, 2003 - Troy was late by fourteen (14) minutes. He was working for an operator.

SEPTEMBER

September 17, 2003 - Jerry Miller told Troy that he could not wear a tank top at work.

September 18, 2003 - Jerry Miller informed me that Troy was wearing a tank top during work hours, after he had already told him the day before that he could not wear those types of shirts at work. I went to Troy and told him that he could not wear these tank tops at work.

September 22, 2003 - Troy complained to Larry Kilwy that I was harassing him because I was watching him paint. I was watching him because of his frequency four (4) times of taking the truck from a work site to the shop, restroom or breakroom. This all happened before the 10:00 break.



September 22, 2003 - Troy and Chris Ray used seven (7) gallons of paint for a 225' area. There was paint all over the ground.

September 22, 2003 - Troy and Chris walked into the break room to get paint shirts at 7:15 a.m. Chris came out at 7:20 a.m. I went looking for Troy who was still in the break room until I walked in at 7:25 a.m. Before entering the break room I told Jim Garrison to watch and see if when I approached the break room that Troy would come out and he did just that. At 8:00 a.m. Troy went to the break room to get water. At 8:15 a.m. I went in after him. At 10:20 a.m. I went into the operators break room and said to Jeff Slead and Jim Henry - Is the break over"? They responded by saying yes. I stated to Troy that his break was over. He then got up and went to work.

September 23, 2003 - Everyone had left the break room except Troy. He was in the operators break room. I told him his break was over at 10:22 a.m. After lunch I had to walk in to get Troy after everyone was out of the break room.

September 23, 2003 - While cleaning up brush and cutting trees Troy took the truck six (6) times to the shop or bathroom.

September 24, 2003 - While working at North of Creek clean up, Troy took off in the truck. I told Jim Garrison about Troy taking the truck so much. At that time Jim Garrison, Troy and myself discussed that if Troy needed anything from the shop, Larry Gebhardt would be the one to get it. I did not want Troy driving the truck.

OCTOBER

October 7, 2003 - Troy is the last one out of the operators break room. He is seven (7) minutes late.

October 8, 2003 - Troy did not come out of the break room until 7:15 a.m. George Murphy and Troy were told to paint a fence. Larry took George to the job site after waiting ten minutes for Troy to come out of the break room. At 7:15 a.m. Troy walked out of the break room and I had Larry take him to the job site to paint with George.
After break, George was ready to go paint and Troy was not out of the break room yet so Larry took George to paint. When Troy finally came out of the break room I told him to walk to the fence. He stopped and asked John Evans to take him to his job site, after I had already told him to walk to the fence. I told him this in front of Jim Garrison.

October 8, 2003 - The Union Steward, Chuck McCoy, went to where Troy was working and talked to him for about forty five (45) minutes.

October 8, 2003 - Troy walked back to the bathroom twice (2) before lunch and again twice (2) after lunch.

October 8, 2003 - Jim Garrison, Troy and I talked at 3:15 p.m.. I told Troy that he needed to be ready after break when everybody is ready to go and he can ride to the job site. If not, he needs to walk. Troy said that the time clock in the operators break room was not the same time as the



crewroom clock. I informed Andy what Troy said. Andy's response was if Troy could not be back when everyone else was, that he would have to take his break with everyone else.

October 9, 2003 - I told Troy in front of Jim Garrison and others that Andy said that if he cannot be ready to go when everybody else is after break that he is not going to be able to take breaks in the operators break room. Troy stated that he (Andy) could not tell him where he could take his break. Troy was the last one out of the break room at 7:03 a.m. After lunch I had Jim Garrison go inside to get Troy out of the break room after everyone was in the garage.

After the Labor Management Meeting I told Andy that Troy had complained to the stewards that I was harassing him because I was watching him.

Andy told me to keep doing my job. Troy is still on probation.

October 10, 2003 - Troy came back to the shop at 2:20 p.m. and just stood around. Jim Garrison said he did not let anybody know what he was doing.

October 13, 2003 - Troy was not outside after break when everyone else was. After several minutes of waiting in the truck, I told Chris to go to the job site. When Troy finally came outside he saw that the truck was gone. He then looked to the bar screen house where Chris was already working. Then he started to walk over to the job site where Chris and he were before break.

October 29, 2003 - I told Larry Gebhardt to drive the truck only. I told Greg Fraase that he was to be the only one to drive the enloader. I told Joe Ferguson and Chris Ray to cut trees only. I told George and Troy that I wanted them to bring the branches up and stack them. I went back several times to check on the progress and Troy was not hauling branches. Joe and Chris told me Troy said that "he was not going to walk up and down the mother-fucking hill with these branches".

October 30, 2003 - I told Troy to haul branches up the hill and stack them. I informed him that this is all I want him doing. He helped stack but would not go down the hill to get them like I told him to earlier. Chris again told me that Troy said " he was not going down the mother fucking hill".

October 31, 2003 - I told Larry Gebhardt to drive the truck when loaded. I also said to carry the branches up the hill and load the truck. I told Troy to cut trees only.

NOVEMBER

November 19, 2003 - In the a.m. while checking on the paint crew, George, Joe, Troy and Chris, were in the gallery building. During my three (3) visits, Troy was gone twice (2). Larry Gebhardt said he was hanging around the break room three (3) different times.

November 19, 2003 - I told Troy to paint the ceiling of the gallery building with a paint roller. I came back to check on Troy twice (2) between 12:35 p.m. and 1:45 p.m. Both times Troy was no where to be found. I asked Greg Fraase if he knew where Troy was and Greg said that Troy was in the break room. Troy told him that he was not going to paint that mother fucking ceiling.



I waited until Troy came back and asked why he did not paint the ceiling, his response was, it was too wet. At 1:45 p.m. the temperature was 56 °. I told him to paint the fence.

November 21, 2003 - While working, I noticed that Troy was sitting in someone's yard. I told Troy to get up and he did. Five minutes later he was sitting in the same place I had told him to get up from. This time I told him to get up and not to sit in someone's yard. This was done in the presence of Jim Garrison.



Thurs. Aug. 7, 2003

laborers finished checking diffusers in # 5 tank at Sugar C. * came out. I told Chris Ray to take another man down to take off end caps He said why don't I send somebody down that hasn't been down. I said I'll find Ron N. and find out who he wants down in tank. Chris said he was only kidding. I couldn't find Ron N. so I said somebody get in the tank or we'll pick up & go back to plant. Troy Hamilton said there was to much shit in the tank.

Joe F. * Brian (summer help) went down. When they got down toward other end they must have made a deal. Joe F. * Brian came up and Troy H. * Chris R. went down.

Jim Harrisson

# SPRINGFIELD METRO SANITARY DISTRICT

## EMPLOYEE EVALUATION FORM



Name: _TROY HAMILTON_    Date: _Feb. 19, 2002_    Employee Hire Date: _August 13, 2001_

Job Title: _Janitor_    Certified Operator?  ☐ yes  ☒ no    If yes, Class_____

Evaluation Period:   From _Nov. 13, 2001_ to _Feb. 13, 2002_    Last Date Evaluated: _Nov. 19, 2001_

Instructions:   Listed below are a number of traits, abilities, and characteristics that are important for job success. Place an "x" mark on each rating scale, next to descriptive phrase which most nearly describes the person being rated.

## EMPLOYEE WORK PERFORMANCE EVALUATION

**Job Knowledge** is the information concerning work duties which an individual should know for a satisfactory job performance.

|     |     |
| --- | --- |
| _____ | Complete lack of job knowledge. |
| _____ | Below average knowledge of work duties. |
| __X__ | Average job knowledge; can answer most common questions. |
| _____ | Above average job knowledge, can answer most questions. |
| _____ | Outstanding job knowledge, understands all phases of job. |

**Accuracy** is the correctness of work duties performed.

|     |     |
| --- | --- |
| _____ | Makes frequent errors. |
| _____ | Careless; makes recurrent errors. |
| __X__ | Usually accurate; makes only average number of mistakes. |
| _____ | Is exact and precise most of the time. |
| _____ | Is almost always accurate. |

**Alertness** is the ability to understand instructions and recognize potential problems.

|     |     |
| --- | --- |
| _____ | Slow to "catch on"; not very observant. |
| _____ | Requires more than average instructions and slow to recognize problems. |
| __X__ | Average ability to understand instructions and recognize problems. |
| _____ | Usually quick to understand and learn. Above average ability to recognize problems. |
| _____ | Exceptionally keen and alert. Usually sees problem areas before they occur. |

COPY

**Dependability** is the ability to do required jobs well with a minimum of supervising.

| | |
|---|---|
| _____ | Requires close supervision; does no planning or organizing. |
| _____ | Sometimes requires supervision and prompting. Poorly organized. |
| __X__ | Shows average planning and organizations skills. Requires minimal supervision. |
| _____ | Requires little supervision; is reliable. Organizes and plans well. |
| _____ | Requires absolute minimum supervision. |

**Quantity of Work** is the amount of work an individual does in a work day.

| | |
|---|---|
| _____ | Must be constantly watched and prodded to keep busy. |
| _____ | Will do no more than assigned. Makes poor use of slack time. |
| __X__ | Volume of work is satisfactory. Tries to keep busy. |
| _____ | Very industrious; does more than is required. |
| _____ | Superior work production record. Looks for work or suggests work to stay busy. |

**Attendance** is faithfulness in coming to work daily and conforming to work hours.

| | |
|---|---|
| _____ | Very poor attendance and/or frequently reports for work late. |
| _____ | Poor attendance and/or reporting for work on time or conforming to prescribed work hours. |
| __X__ | Average attendance record. |
| _____ | Above average attendance record. |
| _____ | Always regular and prompt. Outstanding attendance record. |

**Housekeeping** is the orderliness and cleanliness in which an individual keeps his/her work or jobsite.

| | |
|---|---|
| _____ | Disorderly or untidy. |
| _____ | Some tendency to be careless and untidy. |
| __X__ | Ordinarily keeps work area fairly neat. |
| _____ | Quite conscientious about neatness and cleanliness. |
| _____ | Unusually neat, clean and orderly. |

**Stability** is the ability to withstand pressure and to remain calm in crisis situations.

| | |
|---|---|
| _____ | Goes "to pieces" under pressure; is "jumpy" and nervous. |
| _____ | Occasionally "blows up" under pressure and/or is easily irritated. |
| __X__ | Has average tolerance for crises; usually remains calm. |
| _____ | Tolerates most pressure; very good tolerance for crisis. |
| _____ | Can handle almost all crisis situations calmly and effectively. |

**Attitude** is the personality to work with and for others.

| | |
|---|---|
| _____ | Does not work well with other employees or management. |
| _____ | Often moody and contentious. |
| _____ | Works well with others and management. |
| __X__ | Personality is friendly and easy to work with. |
| _____ | Has ability to relate to others in a supervisory capacity. |
| _____ | Very outgoing and easy to work with. |



**SUPERVISOR'S COMMENTS:**

Weak points and suggestions of improvement: Use, janitor duties list to
Keep busy on both 1st & 2nd shifts.
Use break time and lunch time for basketball referee
scheduling. Reiterate from 3 month evaluation to be available
as fill in when working as Janitor A.

Strong points: Works well with other employees. Cleans well
on items I've asked him to clean.
Recommended for full time employment.

Overall Evaluation in comparison with other employees with the same length of service:

_____ Unsatisfactory job performance.
_____ Below average but making progress.
___X___ Doing an average job.
_____ Above average performance.
_____ Outstanding employee.

Signature of Supervisor _Jny X. Miller_          Date _Feb. 19, 2002_

**EMPLOYEE'S COMMENTS:**

YES I FEEL THAT I'm GETTING ALONG
WELL With Supervisor I Feel, AND I'm suRE.
He Feel like wise the SANITORS ARE doING A veRy
Good job myself, GREGG, and CHRIS and I hope to
Keep doing And outstanding job for S M SD.

Signature of Employee _Duy L Hamilton_          Date _02/21/02_

# MEDTOX
LABORATORIES, INC.

2940 EVS Corner Rd D # 3 **FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM**
St. Paul, MN 55112
(651) 636-7466
(800) 832-3244

SPECIMEN ID NO. **Y936442E**

MRO: A | | 2 | 2 |

OMB No. 0930-0158

**TEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address, I.D. No.

EMPLOYER NAME **SPRINGFIELD METRO SANITARY**
ADDRESS **3017 N. 2th**
MAP **075220**
**SPRINGFIELD, IL 62707**
**(217) 523-0491**

B. MRO Name, Address, Phone and Fax No.

JAMES FERGUSON, DO
P.O. BOX 2436
BETHESDA, MD 20827

PH 800-275-7051 FX 301-641-0463

LAB ACCESSION NO.

C. Donor SSN or Employee I.D. No. **327605581**

D. Reason for Test: ☒ Pre-employment ☒ Random ☐ Reasonable Suspicion/Cause
☐ Return to Duty ☐ Follow-up ☐ Post Accident ☐ Other (specify)

E. Drug Tests to be Performed: ☒ THC, COC, PCP, OPI, AMP ☐ THC & COC Only ☐ Other (specify)_____

F. Collection Site Address

Collector Phone No. 8 8 2 7 5 6 7 4 4    Collector Fax No. 8 7 7 8 3 8 0 0 2 9

**TEP 2: COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☒ Yes ☐ No, Enter Remark

Specimen Collection:
**30 mL** ☒ Split ☐ Single ☐ None Provided (Enter Remark)    ☐ Observed (Enter Remark)

REMARKS   1:30PM Attempt collection No urine 1:00PM 2nd attempt done void

51119

**TEP 3:** Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)

**TEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed and released to the Delivery Service noted in accordance with applicable Federal requirements.

X _____
Signature of Collector

**JOE PHILLIPS**
(PRINT) Collector's Name (First, MI, Last)

Time of Collection **1325** ☐ AM ☒ PM ►

Date (Mo./Day/Yr.) **01192003** ►

**SPECIMEN BOTTLE(S) RELEASED TO:**
Name of Delivery Service Transferring Specimen to Lab

☒ Airborne Express ☐ Local Courier
☐ Other_____

RECEIVED AT LAB:

X _____
Signature of Accessioner

_____
(PRINT) Accessioner's Name (First, MI, Last)   Date (Mo./Day/Yr.)

**SPECIMEN BOTTLE(S) RELEASED TO:**

**Primary Specimen Bottle Seal Intact**
☐ Yes
☐ No, Enter Remark Below

**TEP 5: COMPLETED BY DONOR**

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _Troy Hamilton_   **TROY HAMILTON**   09/19/03
Signature of Donor   (PRINT) Donor's Name (First, MI, Last)

Daytime Phone No. **(217) 528-0491**   Evening Phone No. **(217) 793-0605**   Date of Birth **09/11/61**
Mo. Day Yr.

Should the results of the laboratory tests for the specimen identified by this form be confirmed positive, the Medical Review Officer will contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5). —DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**TEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**

In accordance with applicable Federal requirements, my determination/verification is:

☐ NEGATIVE ☐ POSITIVE ☐ TEST CANCELLED ☐ REFUSAL TO TEST BECAUSE:
☐ DILUTE   ☐ ADULTERATED ☐ SUBSTITUTED

REMARKS

X _____   _____   / /
Signature of Medical Review Officer   (PRINT) Medical Review Officer's Name (First, MI, Last)   Date (Mo./Day/Yr.)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN**

In accordance with applicable Federal requirements, my determination/verification for the split specimen (if tested) is: ☐ RECONFIRMED
☐ FAILED TO RECONFIRM - REASON_____

X _____   _____   / /
Signature of Medical Review Officer   (PRINT) Medical Review Officer's Name (First, MI, Last)   Date (Mo./Day/Yr.)

A-12b (7)

Employee Health Programs/Substance Abuse Management, Inc.                    Page 1 of 1


Print this report

Return To Search

6430 Rockledge Blvd
Suite 600
Bethesda, MD 20817
(301) 571-0067
Fax: (301) 571-0097



**Date**
September 23, 2003
**ID Number**
337608581
**COC Number**
Y9364426
**Name (if available)**
TROY HAMILTON
**Reason for test**
PreEmployment

### Medical Review Officer
### Drug Test Results

**Date/Time collected**
9/19/2003
**CCF Received**
9/22/2003
**Laboratory**
MEDTOX

**Company:**
MTA
11262

| Test Name | Results | Cut-off levels | |
|---|---|---|---|
| | | Initial Test Level | Confirmation Level |
| **HHS5** | | | |
| PHENCYCLIDINE | NEGATIVE | 25 NG/ML | 25 NG/ML |
| MARIJUANA | NEGATIVE | 50 NG/ML | 15 NG/ML |
| OPIATES | NEGATIVE | 2000 NG/ML | 2000 NG/ML |
| COCAINE | NEGATIVE | 300 NG/ML | 150 NG/ML |
| AMPHETAMINES | NEGATIVE | 1000 NG/ML | 500 NG/ML |

Released: 9/22/2003 5:50:38 PM
Released By:

I HAVE REVIEWED THE LABORATORY RESULTS FOR THE SPECIMEN IDENTIFIED BY THIS FORM IN
ACCORDANCE WITH APPLICABLE REQUIREMENTS. MY DETERMINATION/VERIFICATION IS:

**NEGATIVE**

Donald Ian Macdonald, M.d.
Medical Review Officer

Return To Search

**FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM**

SPECIMEN ID NO. Y181499091

402 W County Rd D 123 • St. Paul, MN 55112 # 3

OMB No. 0930-0158

**TEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

M T A / 1 / 2 6 2

| A. Employer Name, Address, I.D. No. | B. MRO Name, Address, Phone and Fax No. | LAB ACCESSION NO. |
|---|---|---|
| EMPLOYER NAME: PRINCE CLARENCE HOSPITAL, PITT ADDRESS: 2411 D | JAMES S FERGUSON MD P.O. BOX 2830 BETHESDA, MD 20827 | |
| PRINCE CLARENCE FL 63707 | PH 800-275-7093 FX 301-481-0843 370001 | |

C. Donor SSN or Employee I.D. No. 227 01 9 1

D. Reason for Test: ☐ Pre-employment ☒ Random ☐ Reasonable Suspicion/Cause
☐ Return to Duty ☐ Follow-up ☐ Post Accident ☐ Other (specify)

E. Drug Tests to be Performed: ☐ THC, COC, PCP, OPI, AMP ☐ THC & COC Only ☐ Other (specify) _____

F. Collection Site Address

Collector Phone No. 8 7 7 8 3 8 0 9 8  Collector Fax No. 8 7 7 8 3 0 0 2 8

MS JOE FALLON
C1 WEST COUNTY ROAD D  C/O MEDTOX LAB  NEW BRIGHTON  MN  55112

**TEP 2: COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☒ Yes ☐ No, Enter Remark

Specimen Collection:
☐ Split ☐ Single ☐ None Provided (Enter Remark)  ☐ Observed (Enter Remark)

REMARKS  51119

TEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)

**TEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed and released to the Delivery Service noted in accordance with applicable Federal requirements.

X _____ Signature of Collector

Time of Collection: 30  ☒ AM ☐ PM

LUC PHILLIP (PRINT) Collector's Name (First, MI, Last)

Date (Mo./Day/Yr.): 30 / 2004

**SPECIMEN BOTTLE(S) RELEASED TO:**
Name of Delivery Service Transferring Specimen to Lab
☒ Airborne Express ☐ Local Courier
☐ Other _____

**RECEIVED AT LAB:**

X _____ Signature of Accessioner

_____ (PRINT) Accessioner's Name (First, MI, Last)

Date (Mo./Day/Yr.): / /

**SPECIMEN BOTTLE(S) RELEASED TO:**

**Primary Specimen Bottle Seal Intact**
☐ Yes
☐ No, Enter Remark Below

**TEP 5: COMPLETED BY DONOR**

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _____ Signature of Donor  TROY HAMILTON (PRINT) Donor's Name (First, MI, Last)  Date (Mo. / Day / Yr.): / /

Daytime Phone No. ( ) _____  Evening Phone No. ( ) 792 2805  Date of Birth 9 / 11 / 61  Mo. Day Yr.

Should the results of the laboratory tests for the specimen identified by this form be confirmed positive, the Medical Review Officer will contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5). —DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**TEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**

In accordance with applicable Federal requirements, my determination/verification is:
☐ NEGATIVE ☐ POSITIVE ☐ TEST CANCELLED ☐ REFUSAL TO TEST BECAUSE:
☐ DILUTE ☐ ADULTERATED ☐ SUBSTITUTED

REMARKS _____

X _____ Signature of Medical Review Officer  _____ (PRINT) Medical Review Officer's Name (First, MI, Last)  Date (Mo./Day/Yr.): / /

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN**

In accordance with applicable Federal requirements, my determination/verification for the split specimen (if tested) is: ☐ RECONFIRMED
☐ FAILED TO RECONFIRM - REASON _____

X _____ Signature of Medical Review Officer  _____ (PRINT) Medical Review Officer's Name (First, MI, Last)  Date (Mo./Day/Yr.): / /

A-130 (1/02)

Employee Health Programs/Substance Abuse Management, Inc.                    Page 1 of 1

🖨 Print this report

Return To Results

6430 Rockledge Blvd
Suite 800
Bethesda, MD 20817
(301) 571-0067
Fax: (301) 571-0097



First Advantage companies

**Date**
March 17, 2004

**ID Number**
337608561

**COC Number**
Y10148809

**Name (if available)**
TROY HAMILTON

**Reason for test**
Random

**Date/Time collected**
3/9/2004

**CCF Received**
3/11/2004 2:34:00 PM

**Laboratory**
MEDTOX

# Medical Review Officer
## Drug Test Results

**Company:**
MTA MALL
11262

| Test Name | Results | | Cut-off levels | |
|---|---|---|---|---|
| | | | Initial Test Level | Confirmation Level |
| HHS5 | | | | |
| PHENCYCLIDINE | NEGATIVE | | 25 NG/ML | 25 NG/ML |
| MARIJUANA | NEGATIVE | | 50 NG/ML | 15 NG/ML |
| OPIATES | NEGATIVE | | 2000 NG/ML | 2000 NG/ML |
| COCAINE | | POSITIVE | 300 NG/ML | 150 NG/ML |
| AMPHETAMINES | NEGATIVE | | 1000 NG/ML | 500 NG/ML |

Released: 3/17/2004 5:11:00 PM
Released By: rmclean

I HAVE REVIEWED THE LABORATORY RESULTS FOR THE SPECIMEN IDENTIFIED BY THIS FORM IN
ACCORDANCE WITH APPLICABLE REQUIREMENTS. MY DETERMINATION/VERIFICATION IS:

POSITIVE for COCAINE

Robert Mclean, M.D.
Medical Review Officer

Return To Results

disciplined up to and including termination.

Any driver who violates this policy will be advised by the SMSD of resources or treatment available to the employee in evaluating and resolving problems associated with the misuse of drugs or alcohol.

An employee who tests positive or who will be disciplined as a result of drug or alcohol use or abuse may elect to seek additional counseling or rehabilitation for such drug use or abuse. The SMSD shall suspend the imposition of discipline pending the employee's participation in an ASSISTANCE program. If the employee successfully completes such program or treatment, the discipline may be rescinded, depending on the circumstances.

Prior to being eligible to return to duty testing a driver must be evaluated by a Substance Abuse Professional (SAP), who shall set up any ASSISTANCE needed. When the driver has complied with all the recommendations of the SAP, the driver must request the results of the evaluation and notification of release be given in writing to the MRO.

The MRO shall subject such drivers to at least 6 unannounced urine drug tests or breath alcohol tests in the first 12 months after return to duty. Follow up testing shall not extend beyond 60 months.

All records in reference to the referrals, evaluation, return to duty and follow up testing shall be retained for five years.

6

EMPLOYMENT DISCRIMINATION
PRO SE COMPLAINT
PAGE 6

IV.  STATEMENT OF YOUR CLAIM OF EMPLOYMENT DISCRIMINATION

A.  Were you:
    (  )  Not hired?
    (X)  Discharged?
    (  )  Suspended?
    (  )  Demoted?
    (  )  Denied Promotion?
    (  )  Denied Wage Increases?
    (  )  Other (please specify) _____

B.   State here as briefly, concisely and clearly as
possible the essential facts of your claim. Take time to
organize your statement; you may use numbered paragraphs if
you find it helpful. Include precisely how each defendant
in this action is involved. Include the names of other
persons involved who are not defendants; give dates and
place. Concentrate on describing as clearly and simply as
possible the employment practice you allege to be illegal,
and how it discriminated against you. IT IS NOT NECESSARY
TO MAKE LEGAL ARGUMENTS OR CITE ANY CASES OR STATUTES. IN
MOST CIRCUMSTANCES, THIS ONLY MAKES THE CLAIM OF A LAYMAN
MORE DIFFICULT TO UNDERSTAND. AS MUCH AS POSSIBLE, LET THE
FACTS SPEAK FOR THEMSELVES.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

DO NOT FEEL COMPELLED TO USE ALL THE SPACE.

EMPLOYMENT DISCRIMINATION
PRO SE COMPLAINT
PAGE 7

## V.   RELIEF YOU REQUEST

Check below what you want the court to do for you.  You may
make as many checks as you like.

( ✓ ) Should you prevail in this lawsuit, award you back pay.

( ✓ ) Should you prevail in this lawsuit, reinstate you in
your old position.

( ✓ ) Should you prevail in this lawsuit, award you certain
costs of suit (but not attorneys fees).

( ✓ ) Other  ALL   REASONABLE  &  Eligible
RELIEF  the  Court  deems  Appropriate.

Signed this  May 25  day of  May  , 2005

_____
Nay L. Hamilton
(Signature of plaintiff
or plaintiffs)

ADDRESS:

1327 Dennison Dr
Apt c# SPFLD, IL 62704

PHONE NO.:  793-0605