UNITED STATES DISTRICT COURT
Central District of Illinois

| | |
|---|---|
| Troy L. Hamilton,<br>    Plaintiff,<br><br>  vs.<br><br>Springfield Metro Sanitary District,<br>    Defendant. | )<br>)<br>)<br>)  Case No. 05-3129<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

  Plaintiff, Troy L. Hamilton (hereinafter referred to as "Plaintiff"), previously an employee of Defendant, Springfield Metro Sanitary District (hereinafter referred to as "the District"), was terminated by the District on March 26, 2004 after testing positive for cocaine in a random drug test, part of a random drug testing policy and program created by a third party, the Mid-West Truckers Association (hereinafter referred to as "the MTA"), adopted by the District, and administered by the MTA. Subsequently, Plaintiff filed a complaint with the EEOC, which was unable to determine that a violation of the applicable statute occurred, dismissed Plaintiff's complaint, and issued a right to sue letter. Plaintiff then, pursuant to his right to sue letter, brought his claim before this Honorable Court, against the District, and names in his Complaint the Director of the District Andy Alvey (hereinafter referred to as "Alvey") and Plaintiff's former immediate supervisor Ron Nyberg (hereinafter referred to as "Nyberg"), alleging that Plaintiff was the victim of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, for matters arising during his employment and from his termination.

  The District did not discriminate against Plaintiff on the basis of his race. The District supervised Plaintiff and documented his performance during a probation period, required by contract after a promotion, in order to assess Plaintiff's ability to perform his new job position. Plaintiff's probation period was extended due to poor job performance. Near the end of Plaintiff's extended probation, he was selected under the District's random drug testing policy and program, to be drug tested. All District employees in job positions requiring CDL licenses are covered by this policy and, therefore, subject to random drug testing. The drug testing

1

program, including the computer bank which produces the random selection lists, is operated and administered by a third party provider, MTA. Plaintiff tested positive for cocaine in both samples of a split sample. Plaintiff was terminated pursuant to the District's drug policy which indicates that an employee will be terminated upon one violation. Plaintiff was replaced by a less senior, white employee pursuant to the requirements of the collective bargaining agreement which requires that most senior person bidding for the job opening shall be selected. There is no genuine issue of material fact in dispute as to any of Plaintiff's claims. Therefore, the Defendant, Springfield Metro Sanitary District is entitled to judgment as a matter of law, and Plaintiff's claim should be dismissed, with any such other relief as this Court deems reasonable being provided to the District.

## II. BACKGROUND (UNDISPUTED MATERIAL FACTS)

1. Plaintiff was formerly an employee of the District. Alvey testified that Plaintiff was hired on August 13, 2001. See Alvey Deposition, p. 5, lines 7-16. Also see Alvey Deposition, Exhibit 2.

2. Plaintiff was terminated on March 26, 2004 for testing positive for cocaine in a drug test, as testified to by Alvey. See Alvey Deposition, p.14, lines 9-12. Also see Alvey Deposition, Exhibit 2.

3. The District has a Personnel Policy Manual. Alvey testified that such manual was implemented on August 30, 1994. See Alvey Deposition, p. 4, lines 6-13. Also see Alvey Deposition, Exhibit 1.

4. The Personnel Policy Manual includes a non-discrimination policy. Alvey testifies that the policy reads as follows, "[t]he District is an equal employment opportunity employer and does not discriminate against employees or job applicants on the basis of race, religion, color, sex, age, national origin, handicap, veteran status, or any other status or condition protected by applicable federal or state statutes, except where a bona fide occupational exception applies." See Alvey Deposition, p. 6, lines 2-13. See Alvey Deposition, Exhibit 1, p. 6, paragraph 2.

5. The District has a drug policy, as testified to by Alvey. See Alvey Deposition, p. 6, lines 19-21. See Alvey Deposition, Exhibit 3.

6. Plaintiff received a copy of the drug policy. Alvey testifies that Plaintiff received a copy of the drug policy in September of 2003 after he was moved into a position that required a CDL license, and "CDL drivers are required to follow the policy." See Alvey Deposition, p. 7, lines 10-21. See Alvey Deposition, Exhibit 3.

7. The drug policy prohibits possession of drugs on all company premises and subjects any violator to termination on the first violation, as testified to by Alvey. See Alvey Deposition, p. 8, lines 5-24, and p. 9, lines 9-18. See Alvey Deposition, Exhibit 3, p. 6, paragraph 2, and p. 26, "Option 1".

8. Plaintiff was aware of the drug policy and the consequences for testing positive for an illegal drug, as indicated by the fact that Plaintiff initialed, and dated on September 17, 2003, every page of the drug policy. See Alvey Deposition, p. 14, lines 13-24 and p. 15, lines, 1-4. Alvey testified that the drug policy was in effect during Plaintiff's entire employment and that Plaintiff received a copy of it in September 2003 after becoming subject to the policy in a new position. See Alvey Deposition, p. 7, lines 4-14. See Alvey Deposition, Exhibit 3.

9. The District's drug testing program is administered by MTA, and the District has no control over the selection of individuals for testing. Alvey testified that as part of the MTA program, about 12 to 13 thousand CDL licenses are randomly selected from a computer bank, which pops up the Social Security numbers of the randomly selected individuals. Notice is sent to each participating employer of its employees that were randomly selected. The program requires, and the notice states that, selected individuals must be tested within 30 days by the MTA's testing units. The District then arranges the date and time within the 30 days with the testing unit for samples to be taken from the individuals. See Alvey Deposition p.10, lines 2-20.

10. Notice was sent to the District that Plaintiff was to be drug tested. Alvey testified as to the contents of a letter from MTA which stated that Plaintiff and employee James Ray had been randomly selected on February 27, 2004 for drug testing to be performed by the end of March 2004. See Alvey Deposition, p. 11, lines 3-15. Also see Alvey Deposition, Exhibit 4.

11. Plaintiff was tested on March 9, 2004, as testified to by Alvey. See Alvey Deposition, p. 12, lines 3-8. Also see Alvey Deposition, Exhibit 5 and Memorandum Exhibit 10.

12. Plaintiff was told by Nyberg upon pickup for testing that Plaintiff had a scheduled drug test, not random. See Plaintiff's Answer to Interrogatories, No. 19.

13. In his Affidavit, Nyberg states that he told Plaintiff that Plaintiff had a scheduled drug test. Nyberg states that he received a call from Jerry Miller, the District's designated drug program administrator, in which Miller told Nyberg to pick up Plaintiff and bring Plaintiff to the office as Miller had scheduled a nurse to drug test Plaintiff, and the nurse was there. Nyberg further certifies that Miller did not state that this was part of the random drug testing program, but that Nyberg does not remember telling Plaintiff specifically that the test was not random. See Nyberg Affadavit, p. 2-3, paragraphs 12-14.

14. Plaintiff was made aware that the March 9, 2004 drug test was random as the form signed by Plaintiff at the time of sample collection marked "Random" beside the phrase "Reason for Test." See Memorandum Exhibit 10.

15. The results given on March 17, 2004 of the March 9, 2004 drug test showed that Plaintiff tested positive for cocaine, as Alvey testified in Alvey Deposition, p. 12, lines 9-14.

16. After receiving the March 17, 2004 results, Alvey notified Plaintiff of the results with Plaintiff's union representative present and notified Plaintiff of the option to test the split sample. See Alvey Deposition, p.12, lines 15-21.

17. On March 26, 2004, the results of the split sample indicated again that Plaintiff tested positive for cocaine. See Alvey Deposition, p. 13, lines 8-17 and Alvey Deposition, Exhibit 6.

18. Upon notification on March 26, 2004 of the split sample results, Alvey held a meeting that day with Plaintiff and Plaintiff's union representative to notify Plaintiff of the results and that Plaintiff's employment was terminated. See Alvey Deposition, p. 13, lines 18-24 and p. 14, lines 1-12.

19. Plaintiff claims that Pat Friedmeyer and an unknown employee were employees of the District that tested positive cocaine or another illegal substance and were referred to treatment by the Defendant rather than being terminated (Plaintiff's Answer to Interrogatories No. 12). However, Plaintiff then states that no person has ever told Plaintiff of such a referral, nor does Plaintiff have any information from any source whatsoever that leads Plaintiff to believe that the District has made such a referral (Plaintiff's Answers No. 13 and No. 14). Therefore, Plaintiff admits that he has no evidence in support of his contention, or that even helps him form that belief.

20. No District employees, other than Plaintiff, have ever tested positive in a District drug test. See Alvey Deposition, p. 9, lines 19-24 and p. 10, line 1.

21. While no other District employee has ever tested positive, three prior employees voluntarily checked themselves into treatment facilities, with no referral from the District, then notified the District. See Alvey Deposition, p. 15. lines 14-24 and p. 16, lines 1-10.

22. The three District employees that voluntarily sought chemical abuse treatment were: (1) Fred Pittman, race-African American, for drug abuse (2) Elvon Bolden, race-African American, for alcohol abuse, and (3) Patrick Friedmeyer, race-white, for alcohol abuse. See Alvey Deposition, p. 15, lines 14-20, p. 16, lines 11-24, and p. 17, lines 1-2. Each of these employees returned to work after treatment. See Alvey Deposition, p.17, lines 3-7.

23. Plaintiff was promoted by the District to the position of Relief Operator on July 7, 2003. See Alvey Deposition, p. 17, lines 12-19.

24. Upon being promoted, Plaintiff was subjected to a probationary period of 90 days per the collective bargaining agreement between Plaintiff's union and the District. See Alvey Deposition, p. 20, lines 10-13 and p. 26, lines 15-21. See Alvey Deposition, Exhibit 9, p. 12, Article 13, Section 6. Alvey also testifies that this decision was required by the contract and not based on Plaintiff's race. See Alvey Deposition, p. 26, lines 15-21.

25. According to the collective bargaining agreement, during the 90 day probation period, the District has the right to return an employee to his prior position if the employee is not performing the job satisfactorily, or the employer may mutually agree with the employee or the employee's representative to extend the initial probation up to 90 days, at the employer's discretion. See Alvey Deposition, Exhibit 9, p. 12, Article 13, Section 6.

26. Plaintiff's performance during his initial probation period as Operator was evaluated by Nyberg through the creation of a report. The evaluation report documented Plaintiff's numerous deficiencies from July through November of 2003, as observed by Nyberg or communicated to Nyberg by other supervisors or employees. See Alvey Deposition, Exhibit 8.

27. Plaintiff' job performance at the end of the probation period was determined by Alvey as being deficient and Plaintiff's probation period was extended for another 60 working days. See Alvey Deposition, p. 20, lines 14-24. Plaintiff acknowledges the 60 day extended probation in Plaintiff's Answer to Interrogatory No. 16. Alvey testifies that this decision was not based on race, and was solely based on job performance. See Alvey Deposition, p. 26, lines 22-24 and p. 27, lines 1-8.

28. Plaintiff's performance improved to a satisfactory level during the 60 day extended probation period and Plaintiff would have been allowed to stay in the position of Operator at the end of the probation, had he not tested positive for cocaine and been terminated under the District's drug policy. See Alvey Deposition, p. 24, lines 22-34 and p. 25, lines 1-18.

29. Plaintiff never notified Alvey that he felt harassed or discriminated against on the basis of race. See Alvey Deposition, p. 25, lines 19-24 and p. 26, lines 1-5.

30. Alvey testifies that Nyberg told Alvey that Nyberg had been told by Plaintiff's union representative that Plaintiff felt harassed because his supervisor was watching him. Race or color was never mentioned in the conversation. See Alvey Deposition, p. 26, lines 2-9. Nyberg states in his affidavit that he did observe Plaintiff as it was his job to observe Plaintiff's job performance during his probation period to help

5

determine if Plaintiff was able to satisfactorily perform the duties of Operator. Nyberg further states that it was his job to supervise the work crews, so it only stands to reason that he would be observing Plaintiff during times when Nyberg was observing the work crew to which Plaintiff was assigned. See Nyberg Affidavit, p. 1, paragraph 4, p. 2, paragraph 9.

31. Alvey and Nyberg state that no District employee ever notified them, nor made them aware, of any complaints made by Plaintiff to anyone about any racial discrimination. See Alvey Deposition, p. 26, lines 10-14. See Nyberg Affidavit, p. 2, paragraph 11.

32. Plaintiff responds to Interrogatory No. 20, which asks Plaintiff to "describe in detail any instances during your employment with the [District] that you believe support your claim that you were discriminated against based on your race", that when he was removed from his position (terminated), he was replaced by a less senior, white employee. See Plaintiff's Answers to Interrogatories No. 20. Alvey testifies that Plaintiff's replacement was white and less senior. See Alvey Deposition, p. 27, lines 15-23.

33. The person who replaced Plaintiff upon termination was decided based upon the collective bargaining agreement, not Alvey's or the District's discretion. See Alvey Deposition, p. 27, lines 18-24 and p. 28, lines 1-4.

34. The collective bargaining agreement states in Article XIII, Job Openings, Section 1, "[w]hen an opening occurs, the employer shall first try to fill the position from within the organization by offering the position to the bargaining unit members based on seniority.." Article XIII, Section 5 states, "Employees filling such properly submitted bids will be considered primarily on the basis of seniority with secondary consideration given to the ability to perform the duties of the job opening." See Alvey Deposition, Exhibit 9, p. 11.

35. Alvey has always filled openings based on seniority. See Alvey Deposition, p. 29, lines 17-22.

### III.  ARGUMENT

#### A.  Standard for Summary Judgment

The Supreme Court states that summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1267-68 (7thCir. 1990). In *David Balance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 617 (7th. Cir. 2005), the U.S. Court of Appeals for the Seventh Circuit described summary judgment as being properly granted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322. Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to[her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

In light of the standard for summary judgment, it is important to understand from the start that Plaintiff failed to conduct any discovery of his own and failed to appear for his own deposition when subpoenaed by the District, although notified by both the Defendant and the Court. The only discovery in this case, was conducted by the District and confirms that summary judgment is required. Even Plaintiff's Answers to Interrogatories help prove that summary judgment in required.

    **B.**    **Plaintiff Cannot Meet Its Burden For A Racial Discrimination Claim**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1) (2005). In order to avoid summary judgment in an employment discrimination case, a plaintiff must present either direct or indirect evidence showing discriminatory intent by the defendant or its agents. *O'Regan v. Arbitration Forms, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). But Plaintiff provides no direct evidence of racial discrimination, therefore, Plaintiff must rely on indirect evidence through the four-part burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This places the initial burden of establishing a prima facie case on the plaintiff. *McDonnell Douglas*, 411 U.S. at 802; *O'Regan*, 246 U.S. at 983.

To establish a *prima facie* case of discrimination under this approach, Plaintiff must present evidence that, if believed by the trier of fact, would show: (1) he was a member of a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who are in a different class. *Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005). If Plaintiff meets this burden, Defendant has the opportunity to articulate a legitimate nondiscriminatory reason for its action. *Jones v. Union Pacific R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002). If it does so, the burden shifts back to the plaintiff to show that this reason is pretextual. *See id*. The failure to establish any one of the initial four elements defeats a discrimination claim.

      1.      **Plaintiff Fails To Make A Prima Facie Case**

           a.      **Drug testing and termination**

With regard to drug testing and termination, Plaintiff does not establish a prima facie case. Plaintiff establishes the first three of the elements of a prima facie case for discrimination. Plaintiff is African American, and, therefore, a member of a protected class. At the time of Plaintiff's termination, his job performance met the District's legitimate expectations. Plaintiff suffered one adverse employment action. Alvey establishes that the Plaintiff was discharged because, on March 26, 2004 for he tested positive for cocaine in a random drug and alcohol test. Therefore, plaintiff establishes three of the four elements.

But the last element is impossible for the Plaintiff to meet. Plaintiff has not, and cannot, show that he was treated less favorably than any other employee, let alone a similarly situated employee in a different class, as no other District employee has ever tested positive for drugs or alcohol. Plaintiff was also not treated less favorably than other similarly situated employees in a different class through the requirement that he submit to random drug testing or in that Plaintiff was not allowed the opportunity to attend a drug or alcohol rehabilitation

program after testing positive for drugs. Plaintiff was subjected to the same random drug testing under the same drug policy as were all District employees who were required to maintain a CDL license. And since no District employee has ever tested positive before, no District employee has ever been referred to a rehabilitation treatment program by the District after testing positive. Therefore, the failure to prove the last element of this test defeats Plaintiff's discrimination claim, and requires summary judgment for the District.

### b.     Extended probation

With regard to being placed on extended probation, Plaintiff does not establish a prima facie case. First, Plaintiff is African American, and, therefore, a member of a protected class. Second, at the time Plaintiff's probation was extended, his job performance did not meet the District's legitimate expectations. Nyberg documented the numerous deficiencies in Plaintiff's work performance during his initial probation period. And Alvey determined at the end of the first probation period that Plaintiff's work was deficient. Per the collective bargaining agreement, Alvey could have returned Plaintiff to his former position or extended his probation period. Alvey chose to extend the probation period by 60 days, the option more favorable to Plaintiff. Third, Plaintiff did not suffer an adverse employment action as his probation was merely extended. This meant no change in any of his conditions of employment. And fourth, Plaintiff has provided no evidence to show that similarly situated employees in a different class were treated more favorably under the same circumstances.

Therefore, although it is unclear if Plaintiff brings this claim, it would fail as it only meets the first of the four elements of a prima facie case.

### 2.     The District Made Employment Decisions For Non-discriminatory, Legitimate Business Reasons

### a.     Drug testing and termination

Even if Plaintiff had established a prima facie case, the District made its decision to terminate him for non-discriminatory, legitimate business reasons. Plaintiff was promoted into the position of Relief Operator on July 7, 2003, a position which requires the employee to have a CDL license. A CDL license is necessary to drive certain large and safety sensitive vehicles. If an employee were to operate such safety sensitive vehicles under the influence of drugs or alcohol, the employee's judgment would be impaired, and the operation of the said vehicles would be a great safety concern. An employee's decision to operate such a vehicle would constitute inappropriate behavior in the extreme. It is also common knowledge that operating a vehicle under the influence would be illegal pursuant to applicable motor vehicle and illegal drug laws. Therefore, the District is protecting other employees and the public, as well as obeying applicable laws, by subjecting Operators to random drug testing and a policy which requires the termination of any offender. The District's termination of

9

Plaintiff was made for legitimate business reasons, as Plaintiff could not be allowed to perform duties in safety sensitive job positions under the influence of cocaine, or violate multiple laws through his employment.

In *Ballance*, the Court stated, "It would not be appropriate for us to express a view as to whether the sanction imposed against [plaintiff] might be perceived by some individuals as more severe than the infraction justified. Our only job is to assess whether the justifications given by the [employer] for [plaintiff]'s termination are honest. We do not sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." *Balance*, 424 F.3d at 621. Therefore, the District's business reasons for terminating Plaintiff must be taken as legitimate.

b.     **Extended probation**

Even if Plaintiff had established a prima facie case, the District made its decision to extend Plaintiff's probation for non-discriminatory, legitimate business reasons. The District must be able to operate. Therefore, it must have employees that are able to satisfactorily perform the duties of their job positions. This requires nothing more than common sense to understand. But since Plaintiff was not performing satisfactorily, the District opted, as allowed by the collective bargaining agreement, to extend Plaintiff's probation in order to see if Plaintiff could improve his performance to a satisfactory level and be taken off probation. Again, the only other alternative, by contract, would have been to return Plaintiff to his previous position, a demotion.

3.     **The District's Legitimate Business Reasons Were Not Pretextual**

Further, if the burden were to shift back to Plaintiff to show that the District's legitimate business reason is pretextual, Plaintiff would be unable to meet this burden. A plaintiff shows that a reason is pretextual "directly by persuading the court that a discriminatory reason more likely motivated the [defendants] or indirectly by showing that the [defendants'] proffered explanation is unworthy of credence." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Pretext requires more than showing that the decision was "mistaken, ill considered or foolish, [and] so long as [the employer] honestly believes those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000).

a.     **Drug testing and termination**

Here Plaintiff was subjected to a random drug test, which was part of a drug and alcohol abuse policy and program administered by the MTA. Plaintiff tested positive for cocaine, and was terminated as was the consequence called for by the drug policy. All of this was a function of the drug policy and program, not a matter of discretionary judgment on the part of the District. Nothing has been offered into evidence by Plaintiff to suggest that the District's reasons for drug testing or terminating Plaintiff were pretextual, except in his Answers to Interrogatories No. 20. Plaintiff was asked to "describe in detail any instances during your

employment with the [District] that you believe support your claim that you were discriminated against based on your race." In response, Plaintiff gives only one fact that helped him form his belief that that the District's actions were racially motivated. That fact was that when he was terminated, he was replaced by a less senior, white employee. However, Plaintiff being replaced by a white employee cannot be used as indirect evidence that the District's decision was pretextual where the employer had no discretion as to who would fill the job opening. As Alvey states, the provisions of the collective bargaining agreement controlled the process in which the replacement was chosen.

Based on the entire record provided to the Court, it is impossible to determine that the District's reasons for drug testing or terminating Plaintiff are lies. Therefore, the District's actions were not pretextual.

### b.     Extended probation

Nothing has been offered into evidence by Plaintiff to suggest that the District's reasons for extending Plaintiff's probation were pretextual.

### 4.     Summary Judgment Is Required

"If the nonmoving party fails to establish the existence of an element essential to[her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz*, 94 F.3d at 1124. Plaintiff failed to establish a prima facie case, as it fails to show that Plaintiff was treated less favorably than similarly situated employees in a different class. This alone requires the granting of summary judgment. Further, the Court has no occasion to address a plaintiff's arguments because failure to satisfy any element of the prima facie case is fatal to a Title VII discrimination claim. *Ajayi v. Aramark Bus. Servs., Inc.*, 336F.3d 520, 532 (7thCir.2003) (affirming summary judgment for defendant because plaintiff failed to show that similarly situated individuals outside the protected class were treated more favorably). Even if Plaintiff got beyond this impossible burden, he has not proven that the District's actions were pretextual. This also requires that summary judgment be granted to the District.

### C.     Plaintiff Cannot Meet Its Burden For A Racial Harassment Claim

In *Collette Luckie, v. Ameritech Corporation*, 389 F.3d 708, 713 (7th Cir. 2004), the U. S. Court of Appeals for the Seventh Circuit states, "Title VII prohibits an employer from engaging in racial harassment that creates a hostile working environment. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 938 (7th Cir. 1996). To state a claim for a hostile work environment, Luckie must demonstrate that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive

so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004)."

### 1. Nyberg's Supervision Was Not Racial Harassment

Plaintiff cannot satisfy this four-part test to support a claim for racial harassment. As in *Luckie*, here the allegations of harassment do not conform to the traditional hostile work environment claim in that Plaintiff does not allege that he was the target of any racial slurs, epithets, or other overtly race-related behavior. *See Johnson*, 91 F.3d at 938. However, Alvey states that through third-hand information he was told that Plaintiff felt harassed because Nyberg was watching him. However, as Nyberg states in his affidavit, as Plaintiff's supervisor it was his job to observe and evaluate Plaintiff's performance during his probation period. It was also Nyberg's job to observe all work crews when on the job to be sure all workers were performing satisfactorily. This does not rise to a level to constitute harassment.

Plaintiff never supports that this action was based upon his race. The conduct at issue must have a racial character or purpose to support a hostile work environment claim. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Plaintiff provides no mention evidence of a racial character with regard to Nyberg's supervision. On the contrary, the District was exercising a legitimate business decision in its supervision of Plaintiff. Management must be able to observe its employees and document their deficiencies in order to make a sound determination as to whether an employee is able to satisfactorily perform the duties of a position. This is especially true during mandatory probation periods, where the purpose of the probation period is to observe, document, and evaluate the performance of the probationary employee in order to determine whether the employee can satisfactorily perform the duties of the position in which he was newly placed.

Not only was this supervision not harassment, but it was not sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment or create a hostile or abusive atmosphere. A hostile work environment must be both objectively and subjectively offensive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). To determine whether an environment is objectively hostile or offensive, the court must consider all the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance. *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004)." Plaintiff provides no evidence that Nyberg's supervision altered the conditions of his employment or created a hostile or abusive atmosphere.

And finally, Plaintiff provides no evidence that there is a basis for employer liability. Plaintiff, having never clearly pointed out his actual claims, did not conduct any discovery so as to provide support for any specific harassment claim.

### 2. Statement That Drug Test Is "Scheduled" Was Not Racial Harassment

Although the Plaintiff makes some claim regarding whether the drug test was "random" or "scheduled", it is not clear what that assertion has to do with racial discrimination or harassment. Plaintiff states that Nyberg picked him up on the day the drug test was performed and stated that the a drug test was scheduled. Alvey states the nature of the test was random. In addition, the District has submitted into evidence the form used to advise Plaintiff of the test, including its random nature, that Plaintiff signed on the day the drug test was performed. It is obvious that Plaintiff has confused the terms "random" and "scheduled" in a manner consistent with his interests, and inconsistent with the facts. The test was indeed "random", but had to be "scheduled" in order to make arrangements for the attendance of the nurse giving the test, which accounts for Nyberg's statement that Plaintiff had a scheduled drug test.

However, if the Court were to consider Plaintiff's theory with respect this "random" vs. "scheduled" matter to be some sort of harassment claim, it is obvious that Plaintiff has not set forth any facts, or produced any evidence, that would establish such harassment under the four-part test. That is to say, this isolated incident, whatever its import, simply did not (1) subject Plaintiff to unwelcome harassment; (2) was not based upon his race; (3) was not sufficiently severe or pervasive so as to alter the conditions of his her employment and create a hostile or abusive atmosphere; and (4) there is a no basis for employer liability.

### 3. Summary Judgment Is Required

On the issue of racial harassment, Plaintiff cannot, and has not, provided evidence to satisfy the all of the elements under the four-part test. Therefore, summary judgment should be granted on any claim of racial harassment in favor of the District.

### D. Conclusion

Plaintiff cannot, and has not, supported his claims of racial discrimination and harassment and the creation of a hostile work environment on the basis of race. Therefore, the Defendant, Springfield Metro Sanitary District, respectfully prays the entry of this Court's Order of Summary Judgment in favor of the District and against the Plaintiff, for the reasons that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, and a court must grant a motion for summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, and grant the District any such other relief as this Court deems reasonable.

              Respectfully submitted,
              Springfield Metro Sanitary District


              By: ___*Justin Reichert*___
                one of its attorneys

Justin A. Reichert (#6276768)
Bruce Stratton
Stratton, Giganti, Stone & Kopec
725 South Fourth St.
Springfield, Illinois 62703
217-528-2183

CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that service of the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was made by mailing a true and correct copy thereof in a sealed envelope, postage fully to:

Ralph Williams, Esq.
PO Box 3081
Springfield, Illinois  62708


by placing same in the regular United States Mail this  1st  day of May, 2006.

_____